SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Aleice Jeter v. Sam's Club (A-2-21) (085880)**

**Argued January 3, 2022 -- Decided March 17, 2022**

**SOLOMON, J., writing for the Court.**

Under the "mode of operation" rule, plaintiffs who bring premises liability claims against businesses that employ self-service models do not need to show that the business owner had actual or constructive knowledge of a dangerous condition to establish negligence. See Prioleau v. Ky. Fried Chicken, 223 N.J. 245, 248 (2015). In this appeal, the Court considers whether the rule applies to the sale of grapes in closed clamshell containers.

Plaintiff Aleice Jeter filed a negligence claim against Sam's Club after sustaining injuries when she slipped on one or more grapes. Plaintiff stated that she fell while walking away from the checkout area, "halfway past" the fruit and vegetable aisle. Sam's Club asserted several defenses, including lack of actual or constructive notice of the hazardous condition -- loose grapes on the floor.

One day before trial was set to begin, Sam's Club filed a motion in limine to bar plaintiff from requesting a mode of operation jury instruction. Sam's Club argued that the mode of operation rule did not apply because the store sold grapes in closed, sealed packages to avoid unsafe conditions caused by loose grapes. It asserted that its liability for any unsafe condition caused by customers negligently opening the packages of grapes required actual or constructive notice of the condition and could not be imputed to the store through the mode of operation rule.

Plaintiff argued that whether the rule should apply was a question for the jury because the store knew customers were negligently opening the packages of grapes. She added that the mode of operation rule was created specifically to deal with instances of customer negligence and that the "packages pop open all the time."

The trial court, after acknowledging that no party had moved for summary judgment, sua sponte conducted an N.J.R.E. 104(a) hearing to determine whether the mode of operation rule applied and, if not, whether plaintiff could provide some evidence of actual or constructive notice. At the hearing, the judge heard testimony from plaintiff and from the Assistant Store Manager for Sam's Club, who revealed

1

Sam's Club knew that, on occasion, its customers opened the grape containers, but who indicated that practice was viewed as tampering and was "frowned upon."

The court agreed with Sam's Club that the mode of operation rule did not apply, then proceeded to analyze the case under traditional negligence principles that require actual or constructive notice of the dangerous condition -- grapes on the floor. Finding that there was no evidence as to "how long this particular grape [was] on the floor," the court held that plaintiff failed to meet her burden of proving actual or constructive notice and dismissed the case with prejudice.

Plaintiff appealed, arguing that the mode of operation rule applied and that, even if it did not apply here, Sam's Club had constructive notice of the dangerous condition -- grapes on the floor. The Appellate Division affirmed, and the Court granted plaintiff's petition for certification, which asserted only the applicability of the mode of operation rule. 248 N.J. 242 (2021).

**HELD:** The mode of operation rule does not apply to the sale of grapes in closed clamshell containers. Selling grapes in this manner does not create a reasonably foreseeable risk that grapes will fall to the ground in the process of ordinary customer handling. The Court stresses that dispositive motions should not be made or decided on the eve of trial, without providing the parties with a reasonable opportunity to present their cases through testimony and argument.

1. The procedure followed by the trial court in this case is troubling, and the Court provides guidance to the bench and bar. It was improper for the trial judge to convert an untimely motion in limine into a motion for summary judgment. A motion in limine is not a summary judgment motion that happens to be filed on the eve of trial. When granting a motion will result in the dismissal of a plaintiff's case, the motion is subject to Rule 4:46, which states that summary judgment motions must be made no later than 30 days before trial. Here, the judge should have decided the motion in limine and postponed trial for at least 30 days to give both parties time to file briefs with supporting affidavits and certifications. (pp. 12-13)

2. Turning to the legal issue, when an invitee is injured by a dangerous condition on a business owner's premises, the owner is liable for such injuries if the owner had actual or constructive knowledge of the dangerous condition that caused the accident. Mode of operation is a judicially created rule that relieves a plaintiff of the burden of proving actual or constructive notice of a dangerous condition in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents. The rule was first applied in the context of food served in open containers or bins. More recently, the Court applied the rule where a plaintiff slipped and fell on loose grapes near the checkout lanes of

2

a supermarket.  Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 561, 566 (2003).  In that case, the grapes were packaged in "open-top, vented plastic bags that permitted spillage."  Id. at 561.  In applying the mode of operation rule in Nisivoccia, the Court emphasized that a supermarket's mode of operation "includes the customer's necessary handling of goods . . . , an employee's handling of goods, . . . and the characteristics of the goods themselves and the way in which they are packaged."  Id. at 566.  Most recently, in Prioleau, the Court reaffirmed that the rule is limited to the self-service setting, where customers are independently handling merchandise without the assistance of employees.  Id. at 262.  The Prioleau Court clarified that the rule applies wherever "there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred," and whether the injury resulted from employee handling, customer negligence, or the "inherent qualities of the merchandise itself."  Id. at 262-63.  (pp. 14-20)

3.  Here, the Court finds that the mode of operation rule does not apply to the sale of grapes in closed clamshell containers.  Sam's Club is a self-service business, and there was geographic proximity between plaintiff's fall and the self-service sale of grape containers.  But Sam's Club permitted only the self-service sale of pre-packaged sealed grape containers, not grapes, on the display.  The Court finds it compelling that Sam's Club elected not to sell grapes in open-top, vented plastic bags, like those found to create a foreseeable risk of spillage in Nisivoccia, and it finds no nexus between plaintiff's fall on grapes and Sam's Club's self-service sale of grape containers.  The Court is not persuaded by the argument that Sam's Club knew its customers occasionally opened the grape containers in the store because the clamshell package itself was secure and because customers were not permitted to open the containers -- doing so was tampering with the product.  (pp. 20-23)

     **AFFIRMED.**

     **JUSTICE ALBIN, dissenting,** writes that the "mode-of-operation" rule should apply here because Sam's Club knew that customers opened grape containers to taste the goods, and it was reasonably foreseeable that loose grapes would fall to the floor, endangering unsuspecting customers.  Justice Albin states that the burden of production should have shifted to Sam's Club to show that it took reasonable measures, such as checking the aisles, to mitigate foreseeable dangers and avert preventable accidents.  According to Justice Albin, the majority's approach will lead to less safe conditions in stores, more accidents, and an increased number of blameless and uncompensated victims.  In Justice Albin's view, Jeter was entitled to have a jury decide whether Sam's Club acted as a "reasonably prudent business."

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON and PIERRE-LOUIS join in JUSTICE SOLOMON's opinion.  JUSTICE ALBIN filed a dissent, in which JUDGE FUENTES (temporarily assigned) joins.**

SUPREME COURT OF NEW JERSEY

A-2 September Term 2021

085880

Aleice Jeter,

Plaintiff-Appellant,

v.

Sam's Club,

Defendant-Respondent,

and

Linden Route One Associates,

Defendant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| January 3, 2022 | March 17, 2022 |

John D. Gagnon argued the cause for appellant (Rabb
Hamill, attorneys; John D. Gagnon, of counsel and on the
brief).

Floyd G. Cottrell argued the cause for respondent
(Cottrell Solensky, attorneys; Edward Solensky, Jr., of
counsel and on the brief, and George G. Campion, on the
brief).

Michael J. Epstein argued the cause for amicus curiae
New Jersey Association for Justice (The Epstein Law

1

Firm, attorneys; Michael J. Epstein, of counsel and on the brief, and Michael A. Rabasca, on the brief).

Betsy G. Ramos argued the cause for amicus curiae New Jersey Food Council (Capehart & Scatchard, attorneys; Betsy G. Ramos, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

Under the "mode of operation" rule, plaintiffs who bring premises liability claims against businesses that employ self-service models do not need to show that the business owner had actual or constructive knowledge of a dangerous condition to establish negligence. See Prioleau v. Ky. Fried Chicken, 223 N.J. 245, 248 (2015). In this appeal, the Court considers whether the rule applies to the sale of grapes in closed clamshell containers.

Plaintiff Aleice Jeter brought suit against Sam's Club after sustaining injuries when she slipped on one or more grapes in the Linden, New Jersey store. At Sam's Club, grapes are sold in closed clamshell containers secured with tape; accordingly, Sam's Club filed a motion in limine on the eve of trial to bar plaintiff from requesting a mode of operation jury instruction.

The trial court conducted an N.J.R.E. 104(a) hearing and determined that the mode of operation rule did not apply. It reasoned that because Sam's Club "elected to sell grapes, not loosely, but in containers, that will certainly be less of a danger."

The court then analyzed the case under traditional negligence principles. After that sua sponte review, the court concluded there was no evidence to support actual or constructive knowledge of the alleged dangerous condition. The court therefore dismissed the case, even though Sam's Club had not filed a motion for summary judgment. The Appellate Division affirmed the trial court's judgment.

We agree with the trial and appellate courts that the mode of operation rule does not apply to the sale of grapes in closed clamshell containers. Selling grapes in this manner does not create a reasonably foreseeable risk that grapes will fall to the ground in the process of ordinary customer handling.

We stress, however, that the procedure followed by the trial court is troubling and should not be repeated. Dispositive motions should not be made or decided on the eve of trial, without providing the parties with a reasonable opportunity to present their cases through testimony and argument. The trial court should not have reached the merits of plaintiff's traditional negligence claim on its own and without giving the parties any further opportunity to present evidence in support of their positions.

Before this Court, plaintiff has abandoned the argument that Sam's Club had actual or constructive notice of the dangerous condition and relies solely on the availability of the mode of operation rule. Thus, in light of our

determination that the rule does not apply, no issues remain to be addressed. We therefore affirm the judgment of the Appellate Division.

## I.

## A.

The trial court record reveals that in the spring of 2017, plaintiff slipped and fell on a grape or grapes in the "main aisle" of a Sam's Club wholesale store in Linden. According to plaintiff, while walking away from the checkout area after realizing she forgot an item, she slipped and fell "halfway past" the fruit and vegetable aisle. After the fall, plaintiff found grapes stuck to her shoe. Brian Crumm, the Assistant Store Manager at the time, approached plaintiff, who explained what happened. An ambulance then took plaintiff to the hospital. The incident was captured on a video surveillance camera in the store, and Crumm documented the details of his interaction with plaintiff in a customer statement report.

In October 2017, plaintiff filed a negligence complaint against Sam's Club. In its answer, Sam's Club asserted several defenses, including lack of actual or constructive notice of the hazardous condition -- loose grapes on the floor. One day before trial was set to begin, Sam's Club filed a motion in limine to bar plaintiff from requesting a mode of operation jury instruction.

4

In support of its motion to bar the instruction, Sam's Club argued that the mode of operation rule did not apply because the store sold grapes in closed, sealed packages to avoid unsafe conditions caused by loose grapes. It asserted that its liability for any unsafe condition caused by customers negligently opening the packages of grapes required actual or constructive notice of the condition and could not be imputed to the store through the mode of operation rule.

In opposition, plaintiff argued that whether the mode of operation rule applied was a question for the jury because the store knew customers were negligently opening the packages of grapes. She added that the mode of operation rule was created specifically to deal with instances of customer negligence. She also argued that the "packages pop open all the time," are "stacked all over each other," and differ from "toothpaste or something wrapped in cellophane . . . where it would be very exceptional that any of it would get [out] of it."

The trial court, after acknowledging that no party had moved for summary judgment, sua sponte conducted a N.J.R.E. 104(a) hearing to determine whether the mode of operation rule applied and, if not, whether plaintiff could provide some evidence of actual or constructive notice. At the

5

hearing, the judge heard telephonic testimony from Crumm, and in-person testimony from plaintiff.

Both Crumm and plaintiff testified that the Linden Sam's Club sold grapes in plastic "clamshell" containers that clipped shut and were secured by tape. Crumm added that this was the only way the store sold grapes.[1] He further explained that the grapes were delivered to the store from a distribution center in Pennsylvania that pre-packaged the grapes in these closed and taped containers. Crumm also said that the containers were transparent so that customers could see the grapes before buying them, and the grapes were "boxed in a way that's meant to be easily opened and closed repeatedly" after purchase by customers.

Plaintiff testified that during her monthly trips to Sam's Club, she had observed loose grapes not in their containers "several times." She also testified that she observed other customers opening the taped clamshell packages in the store to taste grapes "[p]lenty of times," although during an earlier deposition she admitted that she had never observed produce or other items on the floor at the Linden Sam's Club.

---

[1] Another common way grapes are sold is in "open-top, vented plastic bags." Nisivoccia v. Glass Gardens, 175 N.J. 559, 561 (2003). This Court has held that grapes sold in this manner create a foreseeable risk of spillage and therefore the mode of operation rule applies. Id. at 565.

6

During cross-examination by plaintiff's attorney, Crumm revealed that Sam's Club's knew that, on occasion, its customers opened the grape containers:

> Q: [Y]ou agree with me it's not uncommon for customers to open the grapes and taste one or two of the grapes to see if they're good before they buy them?
>
> A: I mean, it was always sealed shut with the tape so, I mean, you could tell if a customer had opened up the package in the store. You could definitely tell . . . that the package has been tampered with.
>
> Q: Sure. And that . . . it wasn't uncommon for customers to do that. Is that fair?
>
> A: I would say yes. Customers did do that. I know we frowned upon it . . . at the store.
>
> Q: Okay. But you know the customers were doing it. People are tasting the grapes before they buy them. Is that fair?
>
> A: I would guarantee people who did it. Yeah.

The trial judge examined a clamshell grape container in the courtroom and concluded that "the grapes at this store were not sold in loose form," but rather "were sold in a self-contained . . . plastic package . . . [that] actually has a locking mechanism in it." The court was thus "persuaded" that the mode of operation rule did not apply because the store "elected to sell grapes, not loosely, but in containers, that will certainly be less of a danger." The court therefore agreed with Sam's Club and concluded that the mode of operation

7

rule did not apply to the sale of grapes in closed, taped, clamshell containers despite the store's knowledge that customers opened them from time to time.

The court then proceeded to analyze the case under traditional negligence principles that require actual or constructive notice of the dangerous condition -- grapes on the floor. Plaintiff admitted she had no evidence of actual notice but argued there was constructive notice because there was "no evidence to establish when the floors were inspected [and] how long that grape had been there." Sam's Club argued that plaintiff failed to meet her burden to show constructive notice by relying only on a lack of evidence presented by the store. The court agreed, finding that there was no evidence as to "how long this particular grape [was] on the floor." The court therefore held that plaintiff failed to meet her burden of proving actual or constructive notice. The judge concluded the N.J.R.E. 104(a) hearing by stating, "I find there's no legitimate facts in dispute with respect to the actual or constructive notice, and I've already ruled that I cannot give the benefit of the mode of operation charge. So, for those reasons, unfortunately this case is dismissed."

The court then entered an order dismissing the case with prejudice, noting that there was "no basis to proceed." Plaintiff later filed a motion for reconsideration, which the trial court denied.

8

B.

Plaintiff appealed, and the Appellate Division affirmed the trial court's dismissal, holding that plaintiff failed to satisfy all three elements of the mode of operation rule. The court found that the first two elements were met, as it was "undisputed that defendant operated a self-service business" and the location of plaintiff's fall bore a relationship to the self-service component of the store. However, the Appellate Division found that the record "fail[ed] to establish a nexus between the dangerous condition and defendant's mode of operation" -- the rule's third element.

Citing Prioleau, 223 N.J. at 262, the Appellate Division found that Sam's Club's knowledge that customers sometimes opened the clamshell containers was insufficient to satisfy the third element, because the rule only applies when a business "permits" customers to handle the products themselves -- the grapes in this case. Because Sam's Club "frowned upon" customers "tamper[ing]" with the containers by opening them, the court found this case distinguishable from cases in this state applying the rule where the business required that customers handle the product.

As she did before the trial court, plaintiff argued before the Appellate Division that even if the mode of operation rule did not apply here, Sam's Club had constructive notice of the dangerous condition -- grapes on the floor.

9

The Appellate Division disagreed, finding that plaintiff provided "no evidence about how long grapes were there, such as eyewitnesses or any aged characteristics of the grapes, to indicate the amount of time defendant had to discover and remedy the situation."

Although plaintiff did not challenge the procedural posture of the case at the time of dismissal, the court explained that dismissal on the merits following a motion in limine is typically improper but noted that trial courts have broad authority to enter judgment if no issues of fact or law remain. The Appellate Division added that, because plaintiff fully participated in the N.J.R.E. 104(a) hearing, her due process rights were not violated.

We granted plaintiff's petition for certification, which asserted only the applicability of the mode of operation rule. 248 N.J. 242 (2021). We then granted leave to appear as amici curiae to the New Jersey Association for Justice (NJAJ) and the New Jersey Food Council (NJFC).

## II.

Plaintiff asks this Court to reverse the Appellate Division and apply the mode of operation rule to the facts of this case. She claims that a jury instruction on the mode of operation rule should have been given; the jury should have been allowed to determine if the rule applied to the sale of grapes in clamshell containers; and, if the jury determined that the rule applied,

10

whether Sam's Club discharged its duty under the rule. She asserts that there is more than sufficient evidence to support a factual finding of a reasonable nexus between the sale of grapes by Sam's Club and the loose grapes on the floor which caused her fall, pointing to evidence that Sam's Club knew customers were opening the grape containers as support for applying the rule because customer negligence is "precisely what the rule is intended to guard against."

The NJAJ echoes plaintiff's arguments and adds that the Appellate Division's decision "effectively shifts the risk of self-service to customers who have no ability or right to control commercial premises and erodes the high duty of care business proprietors owe to their patrons."

Sam's Club and the NJFC urge this Court not to extend the mode of operation rule to products sold in closed, sealed containers that are not intended to be opened in store. Sam's Club argues that, under the third mode of operation element -- a reasonable factual nexus between the self-service activity and the dangerous condition that caused plaintiff's injury -- there is no clear connection between the way the store sold grapes and plaintiff's accident. Sam's Club further asserts that applying the rule simply because "Sam's Club did not make it impossible for customers to open sealed containers" would "usher in a seismic shift in the law of premises liability since customers can

11

always open products on store shelves that are packaged in paper, cardboard, glass, or plastic."

## III.

Before turning to the substantive legal issue in this case, we provide guidance to the bench and bar regarding the procedure followed here. Although the parties to this appeal do not question the procedure followed by the trial court -- sua sponte dismissal following an N.J.R.E. 104(a) hearing on a motion in limine -- it was improper for the trial judge to convert an untimely motion in limine into a motion for summary judgment.

The New Jersey Court Rules define a motion in limine "as an application returnable at trial for a ruling regarding the conduct of the trial, including admissibility of evidence, which motion, if granted, would not have a dispositive impact on a litigant's case." R. 4:25-8(a)(1) (emphasis added); accord Seoung Ouk Cho v. Trinitas Reg'l Med. Ctr., 443 N.J. Super. 461, 470 (App. Div. 2015) ("[I]t is anticipated that, as a general rule, a motion in limine will not have a dispositive impact on a litigant's entire case."). Parties must exchange information about motions in limine "intended to be made at the commencement of trial" seven days before the initial trial date. Pressler & Verniero, Current N.J. Court Rules, Appendix XXIII to R. 4:25-7(b) (2021).

12

A motion in limine "is not a summary judgment motion that happens to be filed on the eve of trial. When granting a motion will result in the dismissal of a plaintiff's case . . . , the motion is subject to Rule 4:46, the rule that governs summary judgment motions." Seoung Ouk Cho, 443 N.J. Super. at 471. Rule 4:46-1 states that "[a]ll motions for summary judgment shall be returnable no later than 30 days before the scheduled trial date, unless the court otherwise orders for good cause shown."

The procedure followed by the trial court here violated our court rules. The judge should have decided the motion in limine and postponed trial for a minimum of thirty days to give both parties time to file briefs with supporting affidavits and certifications on the question of summary judgment.

IV.

The sole issue raised by this appeal is whether the mode of operation rule applies to the sale of grapes in closed clamshell containers. Our review of that question of law is de novo, and we "accord no 'special deference' to the 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Cherokee LCP Land, LLC v. City of Linden Planning Bd., 234 N.J. 403, 414-15 (2018) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

13

A.

Under New Jersey's general premises liability law, a proprietor owes "his invitees due care under all the circumstances." Prioleau, 223 N.J. at 257 (quoting Bozza v. Vornado, Inc., 42 N.J. 355, 359 (1964)). When an invitee is injured by a dangerous condition on the business owner's premises, the owner is liable for such injuries if the owner had actual or constructive knowledge of the dangerous condition that caused the accident. Ibid. "A defendant has constructive notice when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016) (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). "Constructive notice can be inferred" from eyewitness testimony or from "[t]he characteristics of the dangerous condition," which may indicate how long the condition lasted. Ibid. However, "[t]he mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (second alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)).

Mode of operation is a judicially created rule that alters a plaintiff invitee's burden of proof in certain premises liability negligence actions. Prioleau, 223 N.J. at 258. This Court, guided by equitable considerations, has found it appropriate to relieve a plaintiff of the burden of proving actual or constructive notice of a dangerous condition "in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003). Thus "[t]he rule gives rise to a rebuttable inference that the defendant is negligent, and obviates the need for the plaintiff to prove actual or constructive notice." Prioleau, 223 N.J. at 258.

B.

The background and justification of the mode of operation rule informs our resolution of the issue presented here.

In 1964, this Court considered a case in which the plaintiff slipped and fell on a sticky, slimy substance while purchasing a soda at the defendants' self-service cafeteria. Bozza, 42 N.J. at 358. There, the defendants permitted customers to carry food and beverage items without lids, tops, or trays from the cafeteria counter to nearby tables. Ibid. This Court held in Bozza that the plaintiff did not need to prove actual or constructive notice of a dangerous

15

condition because "the nature of defendants' business and the general condition of defendants' premises would permit a jury to infer negligence." Id. at 361. We added that the defendant could only negate the inference of negligence "by submitting evidence of due care." Id. at 360. Thus, beginning nearly six decades ago, this Court established a burden-shifting framework for business invitees to self-service establishments.

Two years later, this Court applied Bozza's burden-shifting framework to the sale of string beans in open bins, and adopted the term "mode of operation." Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 428-29 (1966). We explained that

> [w]hen greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped to the floor. If the operator chooses to sell in this way, he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate; and this whether the risk arises from the act of his employee or of someone else he invites to the premises. The operator's vigilance must be commensurate with that risk.
>
> [Id. at 429 (emphasis added).]

The Court reasoned that the hazardous condition "could have been caused by (1) carelessness in the manner in which the beans were piled and displayed; or (2) carelessness of an employee in handling the beans thereafter; or (3) carelessness of a patron." Ibid. Finding the defendant's knowledge

16

relevant only to (3) -- the patron's carelessness -- the <u>Wollerman</u> Court explained that, "since the patron's carelessness is to be anticipated in this self-service operation," the defendant could be "liable, even without notice of the bean's presence on the floor." <u>Ibid.</u> Specifically, the Court held that the plaintiff was entitled to an inference of negligence, and that the defendant was permitted to rebut that inference with evidence of due care. <u>Id.</u> at 430.

More recently, and of particular relevance here, this Court applied the mode of operation rule where a plaintiff slipped and fell on loose grapes near the checkout lanes of a supermarket. <u>Nisivoccia</u>, 175 N.J. at 561. The trial court and Appellate Division had held that the mode of operation rule did not apply, reasoning that the accident did not occur in the "produce aisle, nor did it occur close enough to the checkout cashier to have constituted part of the self-service operation." <u>Id.</u> at 562-63. This Court reversed. We found that "the dangerous condition caused by stray grapes in the entry area of the checkout lanes was a foreseeable risk posed by the store's mode of operation." <u>Id.</u> at 566.

After explaining that any location in the store where customers handle "loose items during the process of selection and bagging from an open display obviously is a self-service area," we then turned our focus to the way the grapes were packaged. <u>Id.</u> at 565. In <u>Nisivoccia</u>, the defendant packaged

17

grapes in "open-top, vented plastic bags that permitted spillage." Id. at 561.

Because of the nature of the packaging, we concluded that grapes "could easily have fallen out when accidentally tipped or upended in a shopping cart," making it foreseeable "that loose grapes would fall to the ground near the checkout area, creating a dangerous condition for an unsuspecting customer walking in that area." Id. at 565. In applying the mode of operation rule to the facts of Nisivoccia, we emphasized that a supermarket's mode of operation "includes the customer's necessary handling of goods . . . , an employee's handling of goods, . . . and the characteristics of the goods themselves and the way in which they are packaged." Id. at 566.

Most recently, in 2015, we analyzed the mode of operation rule where the plaintiff slipped and fell on a wet, greasy floor in a Kentucky Fried Chicken restaurant. Prioleau, 223 N.J. at 251. The plaintiff argued that the rule applied because she either slipped on oil and grease that employees tracked in from the kitchen, or water from patrons tracking in rainwater. Id. at 264. The trial court gave the jury a mode of operation instruction resulting in a damages award in favor of the plaintiff. Id. at 253. The Appellate Division reversed, and we affirmed its judgment, holding that the rule did not apply.

We reasoned in Prioleau that the plaintiff was not "engaged in . . . any self-service activity, such as filling a beverage cup" or "selecting items from a

18

condiment tray." Id. at 251. The wet floor resulted from either kitchen grease or customers tracking in rainwater -- both "unrelated to any self-service component of defendant's business." Id. at 264-65. Accordingly, we deemed the case an "ordinary premises liability negligence claim." Id. at 265. We remanded for a new trial, concluding that the court's decision to give the mode of operation jury instruction was reversible error because "the jury could have come to a different result had it been correctly instructed." Id. at 266-67 (quoting Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002)).

In rendering our decision, we reached several seminal conclusions regarding our mode of operation jurisprudence. First, we reaffirmed that the rule is limited to the self-service setting, where customers are independently handling merchandise without the assistance of employees. Id. at 262. A self-service setting includes customers coming into "direct contact with product displays, shelving, packaging, and other aspects of [a] facility that may present a risk." Ibid. We stated that the rule was "a special application of foreseeability principles in recognition of the extraordinary risks that arise when a defendant chooses a customer self-service business model" and thus "permits its customers to handle products and equipment, unsupervised by employees." Ibid.

19

Next, we concluded that the mode of operation rule applies in all "areas affected by the business's self-service operations" -- not just the precise location of the self-service setting, but rather wherever "there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." Ibid. (emphasis added). We also held that the mode of operation rule applies whether the injury resulted from employee handling, customer negligence, or the "inherent qualities of the merchandise itself." Id. at 263. Finally, we clarified that the mode of operation rule creates a presumption of negligence, excusing the plaintiff from having to show notice and shifting the burden to the defendant to show it exercised due care. Ibid.

C.

Applying the principles distilled from those cases to the present appeal, we find that the mode of operation rule does not apply to the sale of grapes in closed clamshell containers.

As a preliminary matter, Sam's Club acknowledges that it sells many products in a self-service manner, and that customers are permitted to pick up and handle the grape containers without employee supervision. Furthermore, because plaintiff fell in the "main aisle" of the store, "halfway past" the fruit and vegetable aisle, there was geographical proximity to the self-service sale

20

of grape containers. Thus, the first and second elements of the mode of operation rule -- the self-service nature of the business and geographical proximity -- are not at issue. Sam's Club asserts only that the third element is not satisfied -- a reasonable factual nexus between the self-service activity and the dangerous condition causing plaintiff's injury. In analyzing this third element, we must consider whether the packaging of grapes in closed clamshell containers makes it reasonably foreseeable that grapes will drop on the floor. Prioleau, 223 N.J. at 262.

In this case, Sam's Club permitted only the self-service sale of pre-packaged sealed grape containers, not grapes, on the display. Unlike the facts of Bozza, where customers were permitted to carry food and beverage items without lids, tops, or trays around a self-service cafeteria, 42 N.J. at 358, or Nisivoccia, where customers handled grapes packaged in open-top, vented plastic bags, "a dangerous condition for an unsuspecting customer walking in that area," 175 N.J. at 565, customers at Sam's Club were not intended to handle the grapes or package the grapes themselves. They were intended only to handle the closed grape containers.

Further, in applying the third element to the present appeal, we find it compelling that Sam's Club elected not to sell grapes in open-top, vented plastic bags -- a method we decided creates a reasonably foreseeable risk that

grapes will fall to the ground.  Ibid.; see also Wollerman, 47 N.J. 426

(applying the mode of operation rule to the sale of string beans in open bins).

Customers and Sam's Club employees were not intended to handle the grapes,

and the grapes were packaged and sold in sealed clamshell containers secured

by tape -- a method that posed virtually no chance of spillage during ordinary,

permissible customer handling.  Therefore, we find no nexus between

plaintiff's fall on grapes and Sam's Club's self-service sale of grape

containers.

Our dissenting colleagues, relying on a 1957 Appellate Division opinion

applying the concept of res ipsa loquitor where the plaintiff was injured by a

soda can, Francois v. American Stores Co., 46 N.J. Super 394, suggest that we

expand the mode of operation rule.  We will not do so.  The mode of operation

rule "is a very limited exception to the traditional rules of business premises

liability."  Carroll v. New Jersey Transit, 366 N.J. Super. 380, 389 (App. Div.

2004).

Lastly, we find unpersuasive plaintiff's argument that Sam's Club knew

its customers occasionally opened the grape containers in store.  Sam's Club

sold grapes in secure packaging that posed no foreseeable risk that grapes

would end up on the floor.  Additionally, Crumm testified that Sam's Club did

not permit customers to open the containers in store, and that doing so was

22

tampering with the product. Accordingly, we hold that the mode of operation rule does not apply to the sale of grapes in closed clamshell containers.

## V.

For the reasons expressed, the judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON and PIERRE-LOUIS join in JUSTICE SOLOMON's opinion. JUSTICE ALBIN filed a dissent, in which JUDGE FUENTES (temporarily assigned) joins.

Aleice Jeter,

Plaintiff-Appellant,

v.

Sam's Club,

Defendant-Respondent,

and

Linden Route One Associates,

Defendant.

JUSTICE ALBIN, dissenting.

Tort law is based on certain simple principles, equally applicable to self-service businesses that invite the public onto their premises. Business owners owe a duty of reasonable care to provide a safe environment to the customers who shop in their stores, Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003) (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993)), and, when they fail to do so, must bear the financial costs for those injured due to their negligence, see Hopkins, 132 N.J. at 446-47. For more than fifty years, the mode-of-operation rule has advanced those basic tort principles by shifting to owners of self-service stores the burden of showing that they took reasonable safety measures when customers or employees created a dangerous

condition for unwary and vulnerable patrons. See, e.g., Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 248-49 (2015).

The majority opinion undermines this Court's progressive premises-liability jurisprudence and the effectiveness of the mode-of-operation rule in self-service stores -- and will lead to less safe conditions, more preventable accidents, and an increased number of blameless victims who will go uncompensated for their injuries.

In this case, Aleice Jeter, a fifty-six-year-old woman shopping in Sam's Club, slipped on loose grapes on the store's floor, suffering serious bodily injuries. The presence of those loose grapes on the floor was no mystery. Sam's Club, a self-service store, sold grapes in containers that it knew customers opened for the purpose of tasting the goods. Sam's Club admitted that it "wasn't uncommon" for customers to do so. Knowing that customers were opening its grape containers, it was reasonably foreseeable to Sam's Club that some number of loose grapes would fall to the floor.

Under the mode-of-operation rule, because Sam's Club knew that its customers were handling its grape containers in a way that created foreseeable dangers to other patrons, the burden of production should have shifted to Sam's Club to show that it took reasonable measures to mitigate foreseeable dangers and avert preventable accidents. Such reasonable measures might

2

simply be routinely checking the produce aisles for loose grapes or posting warning signs. Or Sam's Club could argue that the secure nature of the packaging, without more, was a reasonable safety measure.

Whether a self-service store acted reasonably in light of the known or foreseeable dangers will typically be a matter for a jury's determination. The majority has abandoned that common-sense application of the mode-of-operation rule and imposed on Jeter the burden of showing that Sam's Club had actual or constructive knowledge of whether or where the grapes fell and how long they remained on the floor. That impossible burden, understandably, Jeter could not meet and led to the dismissal of her case.

This regressive development in our mode-of-operation case law has been rejected by other jurisdictions and will come at a high cost -- it will encourage laxer safety standards, and victims of preventable accidents will go uncompensated.

I therefore respectfully dissent.

I.

A.

Store owners owe "a duty of reasonable or due care to provide a safe environment for" their customers. Nisivoccia, 175 N.J. at 563 (citing Hopkins, 132 N.J. at 443). That duty requires store owners not only "to discover and

3

eliminate dangerous conditions" on their premises, but also "to avoid creating conditions that would render the premises unsafe." Ibid. (citing O'Shea v. K. Mart Corp., 304 N.J. Super. 489, 492-93 (App. Div. 1997)). Those general principles of premises liability apply with even greater force to self-service establishments where the customers' handling of products, "unsupervised by employees, increases the risk that a dangerous condition will go undetected and that patrons will be injured." Model Jury Charges (Civil), 5.20F, "Duty Owed -- Condition of Premises" (rev. Sept. 2021); Prioleau, 223 N.J. at 262.

Our jurisprudence recognizes that, in the self-service setting, customers may carelessly handle products, such as grapes, Nisivoccia, 175 N.J. at 565, green beans, Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 429 (1966), a cheesecake sample, Walker v. Costco Wholesale Warehouse, 445 N.J. Super. 111, 126 (App. Div. 2016), or a soft drink, Bozza v. Vornado, Inc., 42 N.J. 355, 361 (1964). When customers handle products in such a manner, it is reasonably foreseeable that there will be spillage on the floor, creating hazards to other unsuspecting patrons. See Nisivoccia, 175 N.J. at 565. Store owners have superior knowledge of the dangers that may arise in their self-service settings and the ability to minimize those dangers to their customers. See Wollerman, 47 N.J. at 429 (citing Kahalili v. Rosecliff Realty, Inc., 26 N.J. 595, 606 (1958)).

4

To encourage store owners to maintain a safe environment within a self-service setting and to ensure just compensation to customers injured when foreseeable but preventable accidents occur, this Court developed the mode-of-operation rule. That rule creates a burden-shifting paradigm. If a plaintiff who is injured as the result of a store's self-service operations can satisfy the three prongs of the mode-of-operation rule, "then the plaintiff is relieved of the burden of proving that the defendant had actual or constructive knowledge of the particular dangerous condition," and the burden of production is shifted to the defendant to show "that it did all that a reasonably prudent business would do in the light of the risk of injury that the self-service operation presented." Model Jury Charges (Civil), 5.20F; see also Prioleau, 223 N.J. at 263; Nisivoccia, 175 N.J. at 563-64; Wollerman, 47 N.J. at 429-30; Bozza, 42 N.J. at 360.

To secure the burden-shift of the mode-of-operation rule, the plaintiff must show that (1) the accident occurred in a self-service store; (2) the "accident occurred in an area affected by the business's self-service operations"; and (3) a reasonable factual connection existed "between the defendant's self-service activity and the dangerous condition allegedly producing the plaintiff's injury." See Model Jury Charges (Civil), 5.20F; see also Prioleau, 223 N.J. at 262-63; Nisivoccia, 175 N.J. at 564-65; Wollerman,

5

47 N.J. at 429; Bozza, 42 N.J. at 360. The burden-shift typically will allow the plaintiff to withstand summary judgment and leave the jury as the ultimate arbiter of the facts. See, e.g., O'Shea, 304 N.J. Super. at 494-95.

In this case, the majority accepts that Jeter has established that Sam's Club is a self-service store and that Jeter's accident happened in an area related to the store's self-service operations -- prongs one and two. Ante at ___ (slip op. at 20-21). The case turns on prong three. The majority claims that Jeter has not proven a reasonable factual connection between Sam's Club's self-service operations (the selling of grapes in clam-shell containers) and the dangerous condition that caused Jeter's injury (the grapes on the floor that resulted from customers opening the containers). Ante at ___ (slip op. at 21-22).

The majority takes the crabbed view that because Sam's Club opted to sell the grapes in sealed containers, the mode-of-operation rule does not apply. The majority holds to that view, regardless of the fact that Sam's Club knew that customers often opened those containers, and ignores that the foreseeable result was that grapes would fall to the floor causing hazards and injuries like those suffered by Jeter. See ante at ___ (slip op. at 21-22). That view, however, cannot be reconciled with the application of the mode-of-operation rule in a wide array of cases over sixty years. See, e.g., Nisivoccia, 175 N.J. at

6

565-66 (grapes falling from "open and air-vented bags"); <u>Wollerman</u>, 47 N.J. at 428-29 (green beans spilling "from open bins"); <u>Bozza</u>, 42 N.J. at 358, 361 (soft drinks spilling from lidless cup in cafeteria); <u>Walker</u>, 445 N.J. Super. at 126 (free cheesecake sample falling on wholesale store floor); <u>Francois v. Am. Stores Co.</u>, 46 N.J. Super. 394, 396-97, 399 (App. Div. 1957) (canned goods toppling from shelf).

That an item is sealed does not render the mode-of-operation rule inapplicable. In a self-service store, a customer's pulling out an article from a pile of cans and carelessly reinserting it will trigger the burden-shift when the cans come tumbling down on another customer. <u>Francois</u>, 46 N.J. Super. at 398.[1] That is so because the store owner running a self-service operation is "under a duty to take reasonable measures to guard against injuries to customers due to such fallings of stacked merchandise as may result from these actions of other customers." <u>Ibid.</u>

---

[1] <u>Francois</u>, which is cited approvingly by <u>Wollerman</u> (a mode-of-operation case), relied on the burden-shifting doctrine of res ipsa loquitor, which served as the jurisprudential model for the mode-of-operation doctrine that we know today. <u>See</u> <u>Wollerman</u>, 47 N.J. at 429 (stating that because "the fair probability is that [the] defendant [store] did less than its duty demanded," "[i]t is just, therefore, to place 'the onus of producing evidence upon the party who is possessed of superior knowledge or opportunity for explanation of the causative circumstances'" (quoting <u>Kahalili</u>, 26 N.J. at 606 (res ipsa case), and citing <u>Bornstein v. Metro. Bottling Co.</u>, 26 N.J. 263, 269 (1958) (res ipsa case)).

Like this case, <u>Nisivoccia</u> involved a customer who was injured when she slipped on a loose grape on a supermarket floor. 175 N.J. at 561. In <u>Nisivoccia</u>, Shop-Rite sold grapes in open-vented bags that customers picked up in the produce department. <u>Id.</u> at 561-62. The store manager admitted that loose grapes might fall on the store floor when handled by customers or employees. <u>Id.</u> at 562. The plaintiff fell after she slipped on a loose grape at the supermarket checkout aisle. <u>Id.</u> at 561. The mode-of-operation rule applied, we explained, because it was foreseeable that customers, whether in the produce aisle or at the checkout counter, would drop some of those grapes and expose fellow customers to the risk of injuring themselves. <u>Id.</u> at 565.

For purposes of the mode-of-operation rule, it should make no difference whether a self-service store sells grapes in open-vented bags or in sealed containers, when management knows those containers are readily opened by customers, leading to spillage. Customers face the same hazards and the same injuries from slipping on grapes whether from open-vented bags carelessly handled or sealed containers carelessly opened by customers. Stores, like Sam's Club, have the ability to minimize the risks to which their customers are exposed by taking common-sense precautions.

Other states have applied the mode-of-operation rule to instances in which customers were harmed by slipping on substances that came from sealed

8

packages. In <u>Sheehan v. Roche Bros. Supermarkets, Inc.</u>, the plaintiff-customer slipped on a grape near the service desk in the defendant's self-service store and suffered serious injuries, which resulted in several weeks of hospitalization and additional weeks in a rehabilitation facility. 863 N.E.2d 1276, 1279 (Mass. 2007). The defendant sold grapes "in individually <u>sealed</u> <u>bags</u>, easily opened by the hand, and placed in a wicker basket." <u>Id.</u> at 1280 (emphasis added).

The Massachusetts Supreme Judicial Court held that "if a plaintiff proves that an unsafe condition on an owner's premises exists that was reasonably foreseeable, resulting from an owner's self-service business or mode of operation, and the plaintiff slips as a result of the unsafe condition, the plaintiff will satisfy the notice requirement." <u>Id.</u> at 1286. The Massachusetts high court found "persuasive" our Court's reasoning in <u>Wollerman</u> that when a plaintiff-customer is injured on the premises of a self-service store, "it is 'unjust to saddle the plaintiff with the burden of isolating the precise failure' that caused an injury, particularly where a plaintiff's injury results from a foreseeable risk of harm stemming from an owner's mode of operation." <u>Id.</u> at 1284 (quoting <u>Wollerman</u>, 47 N.J. at 430). Guided by its mode-of-operation approach, the Massachusetts Supreme Judicial Court concluded that "the [supermarket] had notice of the inherent risks associated

with its chosen mode of operation" and denied summary judgment in its favor. Id. at 1287.

In Chiara v. Fry's Food Stores of Arizona, Inc., the plaintiff-customer "slipped on some creme rinse" that apparently spilled when a sealed bottle was opened in the defendant's self-service store. 733 P.2d 283, 284 (Ariz. 1987). The Arizona Supreme Court applied the mode-of-operation rule and held that it was a question for the jury to determine whether the defendant "could have anticipated that sealed bottles regularly were opened and spilled" in the store. Id. at 286. The Arizona high court noted that "[a] person injured in a supermarket fall will rarely be able to trace the origins of the accident" and cited favorably our decision in Wollerman for the proposition that it is "unjust to saddle the plaintiff with the burden of isolating the precise failure [which produced an injury]." Id. at 285 (alteration in original) (quoting Wollerman, 47 N.J. at 430). The Arizona Supreme Court reversed the trial court's entry of summary judgment in favor of the store and remanded the matter for a jury trial. Id. at 287.

Employing legal principles enunciated by our Court, the Supreme Judicial Court of Massachusetts and the Arizona Supreme Court have concluded that the mode-of-operation rule applies even when merchandise is sealed. That conclusion is faithful to our jurisprudence.

10

## II.

In Aleice Jeter's case, the mode-of-operation rule should apply. The burden of production should shift to Sam's Club. The store knew that it "wasn't uncommon" for customers to open the sealed grape containers. Sam's Club is in the best position to explain why and how grapes in a sealed container, opened by customers, wound up on the store's floor, and what steps it took to minimize the risks to unsuspecting customers.

The mode-of-operation rule vindicates tort law's broader goals. One purpose of tort law is to compensate victims who are injured by the negligence of others. See Hopkins, 132 N.J. at 447. Another purpose "is to deter tortious behavior." Id. at 448. Imposing liability on a tortfeasor store for allowing a dangerous condition on its premises has the potential of "fostering reasonable conduct and creating incentives to minimize risks of harm." See ibid. (citing People Express Airlines v. Consol. Rail Corp., 100 N.J. 246, 266 (1985)). Applying the mode-of-operation rule will induce store owners to periodically patrol the aisles for the detritus of products that customers are known to open and provide a safer environment for patrons. See Nisivoccia, 175 N.J. at 563.

When store owners do not exercise due care, there are personal and social costs: more accidents causing injuries and suffering to victims, medical costs, lost work time, lawsuits, and increased insurance premiums. In this

11

case, Jeter slipped on a grape -- an arguably preventable accident if Sam's Club exercised due care and periodically checked or swept its floors. As a result, Jeter suffered herniated cervical and lumbar disks that will cause her to experience "neck and lower back pain . . . for years to come."

The majority opinion lowers the protection for customers of self-service stores. It does not incentivize stores like Sam's Club to take simple steps to prevent the foreseeable consequence of a patron, like Jeter, slipping and injuring herself on fallen grapes. A common-sense review of our jurisprudence commands the application of the mode-of-operation rule in this case. No expansion of the rule is necessary.

Jeter established the factual connection between Sam's Club's self-service activity and the dangerous condition that led to her injury. The majority has improvidently affirmed summary judgment in favor of Sam's Club. Jeter was entitled to have a jury decide what a "reasonably prudent business" should have done in light of the risk of injury to customers.

Accordingly, I respectfully dissent.